**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LATRESA PEOPLES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-08-178 |
| | * | |
| THE MARJACK COMPANY, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

*********************************************************************************

## <u>MEMORANDUM OPINION</u>

Plaintiff Latresa Peoples ("Peoples") brings this action against Defendant the Marjack Company, Inc. ("Marjack")[1] alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") (Count I), intentional infliction of emotional distress (Count II), negligence, negligent hiring, training, and retention (Count III), negligent supervision (Count IV), and retaliation, constructive discharge, and/or wrongful termination (Count V).[2] Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 59). The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The issues have been briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

---

[1] The Court dismissed individual Defendant Ebenezer Josiah from the case on October 1, 2008 (Doc. No. 44). Plaintiff also named "John Doe Company," "John Doe 1," and "John Doe 2," but never requested summonses for these entities, thus they will be dismissed from the suit, in accordance with the Plaintiff's Response to the Court's Order to Show Cause (Doc. No. 39).

[2] On November 4, 2009, Latresa Peoples filed another Complaint against Marjack, alleging only one count— Retaliation and Wrongful Termination, against the same Defendant and arising out of the same cause of action. Unless the Plaintiff can demonstrate, within ten days of the entry of this Order, why this duplicitous case cannot be

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Marjack, a specialty market distributor, hired Plaintiff Latresa Peoples ("Peoples") on or about March 6, 2006, as a branch administrative assistant. Carl Booker ("Booker") was the Assistant Warehouse Manager through August 18, 2006, Lori Park ("Park") was the Branch Manager, and Ebenezer Josiah ("Josiah") was the Warehouse Lead starting in 2006.

On Peoples' first day of employment, Marjack gave Peoples a copy of its Human Resources Manual ("HR Manual"), which contained its anti-harassment policy. (Doc. No. 59, Ex. C, 26-27.) This policy explained Marjack's prohibition of sexual harassment in the workplace and sexual harassment reporting procedures. The reporting procedure required:

> Any employee who believes that he or she is being harassed in violation of this policy or who becomes aware of harassment of a co-worker is expected to immediately bring the matter to the attention of the human resources department or a member of the executive team.

(Doc. No. 59, Ex. C, Ex. 3.) Peoples signed an acknowledgment form, which stated she recognized it was her responsibility to read and understand the HR Manual's contents. Peoples also understood that there was a human resources ("HR") department and knew how to contact the HR department. But, because Peoples did not consult the HR Manual after she experienced harassment, she did not know she was supposed to notify the HR department and executive team if she experienced sexual harassment in the workplace.

Beginning in June 2006 and ending in August 2006, Josiah made inappropriate sexual comments to Peoples one to three times per week. (Doc. No. 59, Ex. C, 176-77). The incidents described in the Complaint are: (1) he told Plaintiff he liked women with big chests and that he would like to look at and feel her breasts, (2) he offered her $200 to feel her breasts, (3) he "inquired

---

dismissed, the Court will dismiss it. *See Latresa Peoples v. Marjack, Inc.*, AW-09-3154.

how much it would cost to perform cunnilingus," (4) on several occasions asked whether he could go to her house and "stay late," (5) "asked to have intercourse in a doggy-style position," (6) "asked if he could stick his fingers inside of her vagina for the purpose of seeing what she tasted like," (7) offered her money in exchange for intercourse, (8) told her that looking at her large chest made him "go crazy," (9) propositioned her to have intercourse and showed her an unused condom in his wallet, and (10) "suggestively caress[ed]" her shoulder. (Doc. No. 66, 3; Doc. No. 66 Ex. B, C, and D at 107.)

In June 2006, Peoples reported these offensive comments to Booker, her supervisor. Mr. Booker told her he would talk to Josiah, but the harassment continued. (Doc. No. 66, Ex. D, 34.) At some point in the beginning of August 2006, Peoples told Josiah she would report the harassment to his wife if he did not stop, and after that, Josiah no longer harassed her. (Doc. No. 66, Ex. D, 41.) On or around September 22, 2006, Park asked Peoples about the harassment and Peoples described it to her. Park then informed Pamela Paladino, Vice President of HR and Operations, of the complaint on the same day. (Doc. No. 59, Ex. B, ¶ 15.)  There is no evidence that prior to that time any member of Marjack's HR department of executive team had knowledge of Josiah's harassment of Peoples. On or about September 25, 2006, Paladino met with the members of the executive team and informed them of the sexual harassment of Peoples by Josiah that Park had reported. On October 4, 2006, Marjack interviewed personnel from the Eagles 3 LLC ("Eagles 3") and requested a written proposal for an investigation into the harassment claims against Josiah. According to Marjack, on October 9, 2006, Eagles 3 began the investigation into Josiah's sexual harassment. On October 12, 2006, after Eagles 3 interviewed Josiah, Marjack suspended Josiah, pending the results of the investigation. On October 17, 2006, Eagles 3 concluded its investigation and found that Josiah had sexually harassed

Peoples, Brown, and another warehouse employee. (Doc. No. 59, Ex. B, ¶ 22.)

Peoples timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 16, 2006, alleging sexual harassment. The EEOC made a finding of discrimination on September 27, 2007.

On September 4, 2007, Plaintiff was terminated for falsifying her time card by failing to clock out when she left the office to pick up lunch. Peoples' supervisor, Sandy Hoffman, informed the HR department of the suspected falsification on August 28, 2007, and Jennifer Howerton from the HR department investigated the allegations by reviewing statements of several witnesses, Peoples' records, and records documenting Peoples' entry and exit from the warehouse. (Doc. No. 59, Ex. B, ¶ 27.) Based on Howerton's findings, Paladino terminated Peoples. Paladino has terminated at least three other employees for the same reason, none of whom had ever filed a charge with the EEOC. (Doc. No. 59, Ex. B, ¶ 29.)

Peoples filed suit in this Court on January 22, 2008 and filed a Second Amended Complaint on June 12, 2008. Currently pending before the Court is Defendant Marjack's Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.    ANALYSIS

Peoples asserts claims of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I), intentional infliction of emotional distress (Count II), negligence, negligent hiring, training, and retention (Count III), negligent supervision (Count IV), and retaliation, constructive discharge, and/or wrongful termination (Count V). After reviewing the record, the Court believes that Peoples' claims of intentional infliction of emotional distress (Count II), negligence, negligent hiring, training, and retention (Count III), negligent supervision (Count IV), and retaliation, constructive discharge, and/or wrongful termination (Count V) cannot survive the Defendant's Motion for Summary Judgment. The Court finds that the claim of sexual harassment in violation of Title VII (Count I) must remain.

1.      **Sexual Harassment**

  a.      **Prima Facie Case**

Title VII prohibits employers from discriminating "against an individual with respect to . . . terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment constitutes prohibited sex discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). "There are two categories of sexual harassment that are generally recognized: harassment that creates an offensive or hostile work environment and quid pro quo sexual harassment, where sexual consideration is demanded in exchange for job benefits." *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 745 (D. Md. 2003) (citing *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983)).

Though Plaintiff alleges sexual harassment under both methods, and Defendant does not directly challenge Plaintiff's prima facie case of sexual harassment, Plaintiff's evidence clearly falls short of a quid pro quo case of sexual harassment. "In order to establish a prima facie case of quid pro quo sexual harassment, Plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) Plaintiff's reaction to the harassment affected tangible aspects of compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment and took no effective remedial action*." Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 745 (D. Md. 2003) (citing *Spencer v. General Electric*, 894 F.2d 651, 658 (4th Cir. 1990)). Here, Plaintiff has failed to allege that her reaction to the harassment affected a tangible aspect of her employment. The only tangible employment action she alleges--termination of her employment more than one year after the end of the harassment --

was obviously not premised on her refusal to succumb to Josiah's sexual advances, and nor does she allege that it was. Thus Plaintiff clearly fails to allege sufficient facts to make out a claim of quid pro quo sexual harassment.

To make a prima facie case of sexual harassment based on an abusive or hostile work environment, a plaintiff must show that: (1) that she was harassed because of her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000).  To determine whether the plaintiff made a sufficient showing of abusive work environment, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work environment." *Sraver v. Surgical Monitoring Servs.*, No. 05-1331, 2006 U.S. Dist. LEXIS 55222, *10 (D. Md. July 27, 2006) (quotation marks and citation omitted). The Court will assume, without deciding, that Plaintiff has alleged evidence sufficient to meet the first three elements of a claim of hostile work environment sexual harassment, as Defendant does not dispute these allegations in its Motion for Summary Judgment.

With respect to the Fourth element, an employer is vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 759 (U.S. 1998). Plaintiff alleges that Josiah was a supervisor, and that Marjack is consequently vicariously liable. The Court expresses some reservations at this point as to whether Josiah can be considered a "supervisor" for the purposes of imputing liability in the Fourth Circuit, as Plaintiff has not necessarily shown

sufficient evidence that he exercised authority to effect tangible employment actions such as hiring or firing. *See Mikels v. City of Durham*, 183 F.3d 323, 333 (4th Cir. 1999) (**"The** determinant is whether as a practical matter his employment relation to the victim was such as to constitute a continuing threat to her employment conditions that made her vulnerable to and defenseless against the particular conduct in ways that comparable conduct by a mere co-worker would not."); *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 291 (4th Cir. 2004) ("However, we decline to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decision-maker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision.").[3] But, because Defendant argues the Court should grant summary judgment on this claim based solely on its affirmative defense, which only applies to situations in which vicarious liability is implied through acts of supervisors, the Court will assume that Defendant has conceded this point, and move on to an analysis of the affirmative defense.

### b.    Affirmative Defense

Defendant argues that the Court should grant it summary judgment on the ground that Defendant has made out an affirmative defense to the sexual harassment claim. Where the

---

[3] Depending on the development of the facts in this case, the Court may find that the proper standard is the negligence standard, used to determine an employer's liability for co-worker harassment. *See, e.g.*, *Cephas v. Pepsi Bottling Group, Inc.*, 2005 U.S. Dist. LEXIS 41934 (D. Md. Dec. 6, 2005) ("Where the alleged harassers are the co-workers of the plaintiff, this last element is typically met by evidence that the defendant knew or should have known about the alleged harassment and failed to take appropriate remedial action."). The outcome would likely be the same with respect to the summary judgment motion.

defending employer took no tangible employment action, an affirmative defense to liability or

damages is available to the defendant, subject to proof by a preponderance of evidence. "The

defense comprises two necessary elements: (a) that the employer exercised reasonable care to

prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee

unreasonably failed to take advantage of any preventive or corrective opportunities provided by

the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-

808 (U.S. 1998).

i.   <u>*Tangible Employment Action*</u>

The preliminary requirement for application of the affirmative defense is that the

employer took no tangible employment action against the employee. Plaintiff does not allege that

her termination was a culmination of Josiah's harassment, but rather that it was in retaliation for

her EEOC filing. As neither party addressed this issue, and the only alleged tangible employment

action took place more than a year after the harassment and was not related to it, the Court will

assume, without deciding, that this preliminary requirement is met. Thus, the affirmative defense

may apply.

ii.   <u>*Reasonable Care in Preventing Sexual Harassment*</u>

Regarding the first element, "distribution of an anti-harassment policy provides

'compelling proof' that the defendant exercised reasonable care in preventing and promptly

correcting sexual harassment unless plaintiff shows that the employer adopted or administered

the policy in bad faith or that the policy was otherwise defective or dysfunctional." *Green v. The*

*Wills Group, Inc.*, 161 F. Supp. 2d 618, 625 (D. Md. 2001) (citing *Barrett v. Applied Radiant*

*Energy Corporation*, 240 F.3d 262, 266 (4th Cir. 2001)). Under the first step of the affirmative

9

defense, Marjack "must prove that it exercised reasonable care in preventing and promptly correcting any sexually harassing behavior.'" *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 265-266 (4th Cir. 2001) (citations omitted).  It is undisputed that Marjack gave Peoples an HR Manual which included Marjack's anti-harassment policy and that Peoples knew the policy was included in this manual, and signed an acknowledgment form that she was responsible for reading it. This anti-harassment policy directed her to report sexual harassment to any members of Marjack's HR department or executive team, and Peoples knew how to identify these individuals. Defendant argues that distribution of this policy alone is sufficient to establish the first prong of the affirmative defense.

But, a Plaintiff can overcome such a showing in the Fourth Circuit by demonstrating "the employer adopted or administered the policy in bad faith or that the policy was otherwise defective or dysfunctional." *Green v. The Wills Group, Inc.*, 161 F. Supp. 2d 618, 625 (D. Md. 2001) (citing *Barrett v. Applied Radiant Energy Corporation*, 240 F.3d 262, 266 (4th Cir. 2001)). Factors which the court may consider in determining if an employer has failed to satisfy the first prong of an affirmative defense, even where it had a written and known anti-harassment policy, include: "deposition testimony that supervisors did not receive training on sexual harassment, management's toleration of and participation in the harassment, evidence that an employee's complaint to a manager produced no corrective action, the close relationship between the harasser and other senior managers, and the anti-harassment policy's failure to assure those reporting harassment that they would not be subject to retaliation." *Thomas v. BET Soundstage Restaurant*, 104 F. Supp. 2d 558, 566 (citing *Williams v. Spartan Communications, Inc.*, 210 F.3d 364 (4th Cir. 2000) (unpublished disposition)).

10

Whether Plaintiff has presented sufficient evidence to create doubt about the effectiveness of the policy is a very close question in this case. Because Plaintiff has provided some evidence of ineffectiveness in this case, it is not clear as a matter of law that Marjack exercised reasonable care to prevent and correct promptly any sexually harassing behavior. There are several points which could allow a jury to conclude that Defendant does not prove the first necessary element of the affirmative defense—that it was "both reasonably designed and reasonably effectual." *Brown v. Perry*, 184 F.3d 388, 396 (4th Cir. 1999). First, Plaintiff alleges Marjack knew of other examples of harassing conduct by Josiah and did not take action against him. Courts have found that "[t]he absence or inadequacy of a response by the employer may invalidate the affirmative defense. Prior complaints about the same harasser may show the employer's knowledge or lack of reasonable care." *Thomas v. BET Soundstage Restaurant*, 104 F. Supp. 2d 558, 566 (D. Md. 2000). Plaintiff alleges that Mr. Booker witnessed, and physically restrained Josiah when he became infuriated with Cheryl Wallace and screamed "f**k you b**ch," repeatedly." (Doc. No. 66, Ex. 13.) Mr. Booker reported this behavior to Ms. Park who reported it to a member of executive team. Though the exact scheme of events following this report are unclear from the evidence presented, Ms. Robinson was terminated from Marjack a few days after the incident, and Mr. Booker has testified that he terminated her partly because of the animosity between her and Josiah. Without making any judgment as to whether the encounter between Robinson and Josiah constituted another instance of sexual harassment, the Court finds that reasonable fact-finders could disagree as to whether Marjack's response to this report of harassment indicates that the policy was not reasonably effectual. (Doc. No. 66, Ex. 13.) Next, the evidence indicates that one of the members of the Human Resources department to whom

victims of sexual harassment were supposed to report, was herself subject to multiple instances of sexual harassment by Josiah. A reasonable fact-finder could determine that this evidence indicates that the implementers of the anti-harassment policy were inclined not to enforce it. Finally, it is undisputed that Plaintiff reported Josiah's sexual harassment to Booker, her supervisor and that he failed to inform either the executive team or HR department, in apparent violation of the anti-harassment policy which directed workers with knowledge of harassment of a co-worker to inform a member of the executive team or HR department. Moreover, the harassment continued after Peoples' reporting to Booker. Though this reporting was not consistent with the directives of the anti-harassment policy, reasonable fact-finders could find that Mr. Booker's inaction upon reporting of serious sexual harassment indicates that the anti-harassment policy was not reasonably effective.

Peoples also contends that the policy was defective because there was an unwritten policy that warehouse personnel were not allowed on the second floor of the building where the HR department and executive team were, unless they were summoned. Additionally, to use the phone, a warehouse employee needed permission from Mr. Booker or Ms. Park. The Court is unconvinced that this arrangement alone made the policy defective because Plaintiff reported the harassment to Mr. Booker, and presumably could also have requested permission to use of the office phone from him to comply with Marjack's sexual harassment policy. Plaintiff has not referenced any cases where a court has found a policy defective on similar grounds. But, construed with all of the other evidence this evidence could point to the existence of an ineffective policy.

iii.    *Reasonable Care in Correcting Sexual Harassment*

Finally, "an immediate investigation and subsequent discipline of the harassing employee is sufficient to establish that defendant exercised reasonable care to correct promptly any sexually harassing behavior." *Green v. The Wills Group, Inc.*, 161 F. Supp. 2d 618, 625 (D. Md. 2001) (citing *Brown v. Perry*, 184 F.3d 388, 398 (4th Cir. 1999)). Marjack's investigation and suspension of Josiah upon learning of the harassment complaint do indicate Marjack exercised reasonable care to correct harassment. As in *Barrett*, where the employer immediately investigated the complaint and fired the harasser within one week of discovering and confirming the harassment, here Marjack responded quickly once it was officially informed of the harassment allegation. Indeed, Marjack suspended Josiah by October 9, 2009, and terminated him less than one month after learning of the complaint. Though Marjack did not act as quickly as the employers in *Barrett*, it did act within short enough of a time frame to constitute an exercise of reasonable care to promptly correct sexually harassing behavior.  *See Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001). Defendant has pointed to evidence that no member of Marjack's HR department or executive team had knowledge of Plaintiff's harassment of Peoples until Park informed it of Peoples' complaints. Marjack hired an outside investigator, Eagles 3 LLC ("Eagles 3"), to look into the complaints, and that investigation began on Monday October 9. Additionally, Josiah was suspended with pay on October 12, 2006. On October 18, 2006, Marjack terminated Josiah's employment based on the Eagles 3 findings.

iv.   *Unreasonable Failure to Take Advantage of Preventative or Corrective Opportunities*

It is clear, on the other hand, that Defendant has satisfied the second required showing of the affirmative defense—that Peoples did not follow Marjack's anti-harassment policy procedure.  With respect to the second element of the affirmative defense, a demonstration that "an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm" because of his or her "unreasonable failure to use any complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808 (U.S. 1998) (citation omitted). Neither an employee's belief that reporting is futile nor an employee's feared embarrassment from reporting on the matter is a reasonable basis for "failing to take advantage of any preventive or corrective opportunities provided by the employer." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268-269 (4th Cir. 2001) (citation omitted). The court considers "embarrassment an especially poor excuse where an employee has reported the experience to colleagues already." *See Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268-269 (4th Cir. Va. 2001) ("If Barrett could bring herself to tell two lawyers, seven colleagues, and the CEO's son about Ramsey's harassment, there is no reason why she could not inform one of the many managers designated to receive a sexual  harassment complaint.")

Peoples reported the harassment to Booker, an employee who was not part of Marjack's HR department or executive team. Plaintiff seems to allege that Defendant satisfied the reporting procedures by notifying Booker. But, the policy clearly states that the executive team and HR department members were the proper authorities to whom those complaints should be directed. In *Barrett*, the Fourth Circuit rejected a plaintiff's argument that her employer must have known

14

she was being harassed because she told so many co-workers about the behavior. Though in this case, the plaintiff told her supervisor, rather than solely her co-workers, and is thus more justified in believing that Marjack knew of the harassment, she still did not comply with the stated discrimination policy. Even if she had assumed that her supervisor would tell the HR department or executive team about the harassment, as the anti-harassment policy directed, she still cannot show she acted consistently with the explicit directives of the anti-harassment policy. Fears that management will not respond to a report are insufficient to excuse Plaintiff from following the reporting procedures.

Because, however, there are disputes of material fact with respect to the first prong of the affirmative defense, the Court cannot conclude that Marjack exercised reasonable care to prevent harassment here. Thus, the Court will not grant summary judgment to Defendant on Plaintiff's sexual harassment claim.

## 2.    **Intentional Infliction of Emotional Distress**

Defendant moves for summary judgment on the intentional infliction of emotional distress claim on the ground that Plaintiff has not pleaded a sufficient level of distress to make out the prima facie case of intentional infliction of emotional distress. A claim of intentional infliction of emotional distress requires: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614, 281 Md. 560, 566, (Ct. App. 1977) (internal references omitted). Defendant apparently does not dispute that Plaintiff has satisfied the first three elements of the prima facie case, and thus the court will assume, without deciding, that Plaintiff has made out these elements.

To meet the fourth element of the prima facie case, Plaintiff must show distress that "no reasonable man could be expected to endure." *Harris*, 380 A.2d at 616 (internal citations omitted). "This threshold is reached when a plaintiff's 'emotional distress is so severe as to have disrupted her ability to function on a daily basis,'" including her ability to work. *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (citation omitted). A mere diminishment of her ability to function is not sufficient. *Id.* Defendant contends that because Plaintiff continued to work for Marjack for more than a year after the harassment ended, and did not suffer any physical, mental, or medical problems during or after her employment, she has failed to allege a prima facie case of intentional infliction of emotional distress. Indeed, Plaintiff alleges that she "was made to feel dirty, humiliated, uncomfortable, suffered sleepless nights due to stress, headaches, did not want to return to work, was forced to seek the medical attention of a psychiatrist who specialized in depression, was diagnosed with depression and prescribed an anti-depressant drug." (Doc. No. 66, 51.) But, these allegations fall short of the necessary showing of severity for a claim of intentional infliction of emotional distress. Though Plaintiff alleges she did not want to return to work, she in fact did, and as in *Takacs v. Fiore*, 473 F. Supp. 2d 647 (D. Md. 2007), that fact is dispositive of her claim. Thus, the Court will grant Defendant summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### 3.    Negligent Hiring, Training, Retention, and Supervision

A claim for negligent hiring, training, retention, or supervision requires a plaintiff to show:

[T]hat her injury was caused by the tortious conduct of a coworker, that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

16

*Bryant v. Better Business Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (citations omitted). It is well established that Title VII violations do not qualify as tortious conduct for the purposes of a claims of negligent hiring, training, retention, or supervision, because these claims must be based on common law injuries. Sexual harassment claims based on Title VII "were not actionable at common law in Maryland. Therefore, this Court may 'not impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law.'" *Bryant v. Better Business Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1223 (W.D. Tenn. 1993)); *see also Braxton v. Domino's Pizza Llc*, No. 97-1501, 2006 U.S. Dist. LEXIS 92902 (D. Md. Dec. 21, 2006) (noting plaintiff had appropriately agreed to dismiss her Title VII-based negligence claim, and finding that a negligence claim based on § 1981 could not stand because it was not based on Maryland common law).

Because the only claim remaining in the case is the Title VII sexual harassment claim, Plaintiff must premise her negligence argument on her Title VII sexual harassment. Indeed, in the negligence-based counts of her Complaint, Plaintiff explains, "Defendant owed the Plaintiff the duty to not discriminate against Plaintiff based on her gender." (Compl. ¶ 42.) Plaintiff simply does not address the clear precedent Defendant provides stating that negligent hiring and supervision claims cannot be based on Title VII violations. Absent any argument for why the Court should veer from clear precedent, the Court cannot allow these claims to stand. Thus, as a matter of law, Plaintiff cannot bring her claims for negligence, negligent hiring, training, and retention (Count III), and negligent supervision (Count IV) in this case.

## 4.   **Title VII Retaliation**

"To establish a prima facie case of retaliation, an employee must show (1) that she engaged

in a protected activity; (2) that her employer took an adverse employment action against her; and (3)

that a causal connection exists between the protected activity and the adverse employment action."

*Lyle v. County of Fairfax Va.*, No. 05-1134, 2006 U.S. App. LEXIS 6025, at *20 (4th Cir. Mar. 10,

2006). Materially adverse means "it well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination." *Id.* Causation requires showing that the adverse employment

action took place "because of" the protected activity. *Dowe v. Total Action Against Poverty*, 145

F.3d 653, 657 (4th Cir. 1998). After a Plaintiff makes a prima facie case, Defendant bears the burden

of producing a legitimate nondiscriminatory reason for the adverse employment action. *See id.* Next,

the Plaintiff bears the burden of showing, by a preponderance of the evidence, that the Defendant's

stated rationale is a pretext for retaliation. *See id.*

 Defendant does not dispute that Plaintiff has met the first two requirements of the prima

facie case of retaliation as Plaintiff engaged in a protected activity by filing an EEOC Complaint,

and Marjack took an adverse employment action by firing her.[4] The parties disagree on whether

there is a causal connection between Plaintiff's EEOC filing and her termination. A plaintiff may

rely on direct evidence of retaliatory intent, or, where there is no direct evidence of an

employer's retaliatory intent, the employee may rely on an inference of causation arising from

---

[4] In her Complaint, Peoples alleges that Marjack retaliated against her for filing the EEOC charge in five ways, four of which clearly fall short of the adverse employment action requirement. Additionally, Defendant shows several of these allegations are not borne out in the evidence aside from Plaintiff's bald allegations in the pleadings. The Court addresses those allegations here, only insofar as necessary to show that they do not present genuine disputes of material fact. First, Plaintiff alleges that Paladino and Allison Bruner, Josiah's wife, retaliated against her by not speaking to her after she filed the charge, but also acknowledges that Paladino had never spoken to her before she filed the charge, and Bruner had only spoken to her twice before she filed the charge. (Pl. Dep. p. 138.) Thus, Plaintiff has not alleged sufficient information to make out a claim based on this ground. Next, Plaintiff alleges her supervisor retaliated against her by speaking with her about a customer complaint, but she acknowledges that her supervisor simply told her to do her best. (Pl. Dep. 137.) Thus, because there was no negative effect resulting from this discussion, this instance falls short of the requirements of an adverse employment action. Next, Plaintiff alleges Marjack failed to tell her about the harassment investigation. But, this withholding of information does not rise to the level of an adverse employment action. Next, she alleges Marjack retaliated against her when someone told her not to use the soda machine or coffee pot in the corporate

the proximity of engagement in the protected activity and the adverse employment action

suffered in retaliation. *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998).

Plaintiff does not allege any direct evidence of retaliatory intent. Instead, Plaintiff seems to argue

that retaliatory intent can be inferred from the proximity between another employee's complaint

of harassment by Josiah and Booker's firing, and other people's fear of retaliation by the

Marjack executive team. But, Plaintiff has not provided any legal authority justifying court

reliance on fears of retaliation or suspicions of retaliation for an inference of causal connection,

and nor does this Court know of any.

When the adverse action occurs "very close" in time to the filing of the EEOC charge, the

Court can infer a causal connection between the two events.  *See, e.g.*, *Silva v. Bowie State*

*Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) (holding that a ten-week lapse of time sufficiently

established a causal connection to survive a motion to dismiss). Plaintiff observes that Marjack

terminated her employment on September 4, 2007, more than ten months after her EEOC

reporting on October 16, 2006. Thus, Plaintiff could potentially rely on a temporal nexus theory

for an inference of causation. But, Defendant disputes that there was a causal connection,

arguing that a temporal nexus of more than ten months is too distant to establish an inference of

causation. In this case, in the absence of any direct argument by Plaintiff, and any other

legitimate indication of a retaliatory intent, the Court agrees with Defendant that the

approximately ten-month lapse between the protected activity and adverse employment action

does not establish an inference of a causal connection.  Thus, the Court believes Plaintiff has

failed to establish a prima facie case of retaliation.

---

office, but she cannot recall if this occurred before or after her EEOC complaint. Thus, she has not alleged sufficient

Even if the Court were to find Plaintiff established a prima facie case of retaliation in this instance, Defendant has offered a legitimate, nondiscriminatory reason for her termination of employment that would defeat the prima facie case. "The employer's burden at this stage 'is one of production, not persuasion; it can involve no credibility assessment.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006) (citation omitted). Defendant terminated Peoples because she falsified her timecard. Marjack had an established policy that falsification of a time card could result in termination of employment. Though, as Plaintiff argues, this policy does seem harsh, it is not the role of the Court to question the wisdom of that policy.

Moreover, The Court believes that Plaintiff has not presented sufficient evidence to show that the Defendant's proffered reason for her termination—violation of company policy—is a pretext for retaliation. Because the Defendant offered a "legitimate nondiscriminatory reason for its decision, plaintiff must come forward with sufficient evidence from which a rational fact-finder could conclude that the proffered reason was a pretext (i.e., a sham) designed to mask . . . [sex] discrimination." *Tarver v. Winter*, 535 F. Supp. 2d 565, 570 (E.D.N.C. 2008). Indeed, Defendant shows that it has terminated three other employees outside of the protected class who did not file EEOC complaints, for violating the time card policy. In the absence of any evidence of a pretext for retaliation, the Court cannot find Marjack retaliated against Plaintiff in this instance. Accordingly, the Court will grant summary judgment to Defendant on the retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will GRANT in part and DENY in part Defendant's

information to base a claim on this ground.

Motion for Summary Judgment.  A separate Order will follow.

    March 4, 2010                                 /s/
             Date                                     Alexander Williams, Jr.
                                               United States District Judge